Sorrel v. Brewster.

## SORREL v. BREWSTER.

Plaintiff wrote to defendant, "I have on hand a lot of furs, which I am anxious to sell." Defendant replied, "I have this day written to Mr. Thomas G. Raitte, of Norwalk, who is my agent, to make you a visit for the purpose of purchasing your furs, and I hope and trust that you and Mr. Raitte will be able to make a bargain for your lot of furs." Raitte afterwards called on plaintiff and purchased the furs, paying part cash and giving a note for the balance, in the name of defendant. *Held*, 1st, that defendant was liable to plaintiff for the unpaid balance, as for goods sold and delivered; 2d, that evidence offered by defendant to prove an agreement between him and Raitte, by which defendant was to advance money to Raitte to purchase furs in his (Raitte's) name, and to have a lien for his advances on the furs purchased, &c., was properly rejected by the court on the trial.

MOTION for a new trial, reserved from Wayne Circuit Court. Assumpsit by Sorrel against Brewster. The declaration contain a special count, on a note executed by one Raitte, in the name of defendant, and the common counts for goods sold and delivered. On the trial the following letters were given in evidence, to prove the agency of Raitte:

"LITHOPOLIS, April 9th, 1844.

Mr. BREWSTER:

Sir—I have to say to you that I have on hand a lot of five to eight thousand fur skins, which I am anxious to sell. If you are in the fur market, you will do well to come and buy my furs. They will run two-

Sorrel *v.* Brewster.

thirds prime. There are five hundred mink, cat and fox, the rest coon. If you come at all, come the first of May. Write me, saying whether you will come or not. M. M. SORREL."

"DEFIANCE, OHIO, April 24, 1844.

Mr. M. M. SORREL, Lithopolis:

Sir,—On my return to Fort Wayne yesterday from the south, I found your letter of the 9th inst., advising me that you had from five to eight thousand fur skins, mostly coon, which you wish to sell, and which I should be glad to purchase.

As my business will detain me one or two weeks yet in this country, I have this day written to Mr. Thomas G. Raitte, of Norwalk, who is my agent, to make you a visit for the purpose of purchasing your furs, and I hope and trust that you and Mr. R. will be able to make a bargain for your lot of furs. Very respectfully yours,

WILLIAM BREWSTER."

"DEFIANCE, April 24, 1844.

MR. THOS. G. RAITTE, Norwalk.

Sir,—*          *          *          *          *          *

Annexed I hand you a copy of a letter which I received yesterday at Wayne from Mr. Sorrel, of Lithopolis, and I wish you to see Mr. S. without delay, and see if you can purchase his lot of furs, but if you cannot make a trade with him for them, I wish you to write me at Fort Wayne (to which place I shall return and remain one or two weeks), and also to Maumee City and Detroit, so that I shall get your letter at one of those places, and I will go and see Mr. S. with you, and see if I can't purchase them. If you can't buy Mr. S.'s furs, I wish you to make an arrangement with him to keep them until I can see him, as it will not do for us to lose so large a lot of furs this season.

*          *          *          *          *          *          *

Very truly yours,

WILLIAM BREWSTER."

Raitte went to Lithopolis, on the first of May, 1844, and on the next day made an arrangement with the plaintiff, in the name of defendant, for the purchase of the furs. Four hundred dollars were paid at that time, and, in June following, he called for the furs, and on taking an account of them, they were found to amount to $5,853 87. Raitte said they amounted to more than he supposed they would, when he

Sorrel v. Brewster.

bargained for them, and gave it as a reason for not having funds sufficient with him to pay the whole amount at that time, and for giving the defendant's note for the balance, amounting to $696 87. Defendant proved an agreement between himself and Raitte, by which he was to advance money to Raitte to purchase furs, and to have a lien upon the furs purchased for the money advanced, and showed a settlement had been had between them, in which the furs purchased of plaintiff were included. This testimony was received subject to objection, and was afterwards ruled out of the case by the court. There was also evidence in regard to a custom among dealers in the fur trade to pay cash for furs, which is fully stated in the opinion of the court.

*Van Dyke and Emmons*, for plaintiff.

*Joy*, for defendant.

*By the court*, GREEN, J. The first inquiry which naturally arises in this case, is, what was the nature and extent of Raitte's agency, in purchasing the furs in question, as between Brewster, his principal, and the plaintiff? If we are able to arrive at a satisfactory conclusion upon this question, there will be no serious difficulty in determining the rights of the parties involved in this suit.

The only evidence of Raitte's power to act as the agent of Brewster, is found in the letters of Brewster, dated the 24th of April, 1844, one of which is addressed to the plaintiff, and the other to Raitte.

In his letter to the plaintiff, the defendant says: " On my return to Fort Wayne yesterday from the south, I found your letter of the 9th inst., advising me that you had from five thousand to eight thousand fur skins, mostly coon, which you wished to sell, and which I should be glad to purchase. As my business will detain me one or two weeks yet in this country, I have this day written to Mr. Thos. G. Raitte, of Norwalk, who is my agent, to make you a visit for the purpose of purchasing your furs, and I hope and trust that you and Mr. R. will be able to make a bargain for your lot of furs."

In his letter to Raitte of the same date, the defendant says: " Annexed I hand you a copy of a letter which I received yesterday at Wayne, from Mr. Sorrel of Lithopolis, and I wish you to see Mr. S. without delay, and see if you can purchase his lot of furs; but if you

cannot make a trade with him for them, I wish you to write me at Fort Wayne (to which place I shall return and remain one or two weeks), and also to Maumee City and Detroit, so that I shall get your letter at one of those places, and I will go and see Mr. S. with you, and see if I can't purchase them. If you can't buy Mr. S.'s furs, I wish you to make an agreement with him to keep them until I can see him, as it will not do for us to lose so large a lot of furs this season."

There does not appear to be any evidence that the contents of this last letter were made known to the plaintiff at or before the time of the sale, nor is it at all material whether such was the fact or not, there being nothing in it which does not harmonize perfectly with that written to the plaintiff.

The defendant, then, must be held bound by the acts of Raitte, as his agent, to the extent to which he held him out, in his letter to the plaintiff, as being authorized to act for him. In that letter he informs the plaintiff that Raitte is his agent, and that he has written to him to make the plaintiff a visit for the purpose of purchasing the lot of furs in question, and hopes they will be able to make a bargain for them. Here is no restriction, or limitation, or condition whatever imposed upon the power of the agent in making the purchase indicated by the principal; but the fact of the agency is announced in the most general terms, accompanied by an invitation on the part of the principal to the plaintiff to bargain with the agent as such.

This case is, then, very clearly distinguishable from that class of special agencies, in which the agency is not held out by the principal, by any acts, or declarations, or implications, to be general in regard to the particular act or business. In the latter case it must from necessity be construed according to its real nature and extent; and the other party must act at his own peril, and is bound to inquire into the nature and extent of the authority actually conferred. Story on Agency, sec. 133.

In a note to this section, Judge Story very justly remarks, that "the whole difficulty, in considering this doctrine, arises from confounding two things with each other, which are essentially distinct, namely, the extent of the authority given to an agent, whether it be limited or unlimited, with the nature of the agency in which he is employed, whether it be general or special. A person may be a general agent, that is, he may be employed in the general business of his principal, and yet

he may be privately limited in the exercise of his agency, by certain instructions given by his principal, far within the general scope of that business. On the other hand, he may be a special agent, that is, he may be employed for a particular object only, and yet he may have an unlimited authority to act within the scope of his agency in that particular affair, or he may be limited therein by like instructions."

In sec. 133, before referred to, Judge Story illustrates the doctrine thus: " If a merchant should appoint a special agent *pro hac vice*, to buy or sell a cargo of cotton for him in his discretion, and he should, by an open letter, state that he had so authorized the agent to buy or sell on his account, and that he would ratify and confirm his acts in the premises; a person who should deal with the agent upon the faith of that letter, and buy or sell the cargo of cotton accordingly, would be entitled to hold the principal bound by the acts of the agent, although the latter might have violated his secret instructions as to the price of the cotton purchased or sold." See, also, note 2 to sec. 127, *id.*

Let us apply this doctrine, thus explained and illustrated, to the case before us. The defendant advertises the plaintiff that Raitte is his agent, and that as such he has requested him to visit the plaintiff, to purchase his lot of furs. He makes no allusion whatever to any restriction of his agent's power. He thus recommends Raitte to the plaintiff's confidence, as one with whom he may safely bargain for the sale of his furs. What, then, had any arrangement between the defendant and Raitte, of which the plaintiff had no knowledge, to do with the rights of the parties? The plaintiff has a right to hold the defendant bound by the acts of his agent, within the scope of that agent's authority, notwithstanding such agent may have acted in bad faith towards his principal, or violated any instructions, or private understanding or agreement between them. Hence, the testimony which was offered on the part of the defendant, of an agreement between himself and Raitte, in regard to the advance of moneys and the purchase of furs, was irrelevant, and the objection made to its introduction was well grounded. Putting this testimony entirely out of the case, the facts appear thus: Raitte, as the agent of the defendant, acting under a general authority for that purpose, bargained with the plaintiff for his entire lot of furs. Upon ascertaining the quantity, it appeared that they amounted to more than the parties had anticipated, and Raitte stated to the plaintiff that

he had not funds enough with him to pay the entire sum to which they amounted. For the balance, it was then agreed that Raitte should give the plaintiff Brewster's due bill, which was done, and the furs were all afterwards delivered by Raitte to the defendant.

The special counts in the declaration, it is said in the argument, have been *nol prossed*, and the plaintiff seeks to recover only upon the indebitatus assumpsit count for goods sold and delivered. Upon this state of facts, is the plaintiff entitled to recover?

The objection based upon the relation existing between Brewster and Raitte, has already been disposed of. But it is further urged, that by the custom or usage of the fur trade, an agent employed in that business, could not incur a debt against his principal. In order to show such custom in this particular trade, two witnesses were examined on the part of the defendant, Mr. Abbott and Mr. Dudgeon, but he seems to have relied principally upon the testimony of Abbott, who had been engaged in the trade for many years. His testimony upon this point, as reported, is as follows:. " He has known instances of agents buying furs, under peculiar circumstances, to a greater amount than they had funds. The general mode is to buy for cash, for furs are always a cash article. Never heard of furs sold for a credit. If I send a man to a place to buy furs, and he unexpectedly finds more than he or I expected, and he has not money enough, he might draw for a balance. We generally give instructions. He would not be authorized to give a note. There is nothing in the course of trade which would prohibit his getting a credit for a small balance, but it is a question of law whether he would be authorized to do so."

The agent in this case was authorized to purchase the furs. He appears to have been provided with a large sum, in money and drafts, but not sufficient to pay in full. As to the *mode* of completing the purchase under these circumstances, he had no instructions. What mode might he adopt, consistently with the usage of the trade? He could not, according to the testimony of Mr. Abbott, give a note in the name of his principal, and, if I understand the witness, he could not get a *credit* for the balance. By *credit*, however, he evidently does not mean an indebtedness due *in presenti*, because, while he says he never heard of furs sold for a credit, he also says he has known of instances of agents buying furs, under peculiar circumstances, to a greater amount than

they had funds, and that if an agent had not money enough, he might draw for a balance. If he might draw for a balance, he must of necessity have power to create a debt, and though the draft were made payable at sight, yet, practically, a credit is given, and time is allowed for payment, until the draft can be presented. If the agent, then, has power to create an indebtedness in behalf of his principal, and to make a draft for the amount thereof, I see no reason why he may not create the indebtedness, and omit to draw for it, especially when he has no instructions to guide him in the particular circumstances.

The true question undoubtedly is, what is the custom of the trade under the particular circumstances of the present case? and that question does not appear to be distinctly answered by the testimony.

The fact that Mr. Brewster treated the furs purchased of the plaintiff as having been bought under the general arrangement between him and Raitte, and that he paid Raitte for them accordingly, can make no difference, so far as the plaintiff's rights are concerned.

As between these parties, the defendant, by his agent, purchased the furs of the plaintiff, and received and disposed of them for his own benefit, without having fully paid the purchase price agreed upon. Is he liable for such balance under the circumstances of this case? I think he is, and that a new trial ought not to be granted. The general mode of conducting the fur business, to which Judge Abbott refers, would seem to be, to send out agents whenever furs were to be purchased, with means to pay for them, and with particular instructions. In such cases, the person dealing with the agent would have no knowledge of the principal, or of the agency, or the powers of the agent, except such as the agent himself might disclose. The usage of a trade conducted in that manner, would, it seems to me, for very obvious reasons, be very different from that which would govern a transaction like that between these parties, where the negotiation is commenced by the parties in person, and one of them substitutes another to act in his stead, and solicits the confidence of the other party in such substitute, for the purpose of consummating a bargain.

*Certified accordingly.*